# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>**REGENERON PHARMACEUTICALS, INC., Applicant,**<br><br>for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings. | C.A. No. |

## MEMORANDUM OF LAW IN SUPPORT OF REGENERON'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. LEGAL STANDARD ...................................................................................................... 4

IV. ARGUMENT ................................................................................................................... 6

    A. Regeneron Satisfies § 1782's Statutory Requirements ........................................... 6

    B. The Supreme Court's *Intel* Factors Also Favor Granting Regeneron's Application ............................................................................................................... 8

        1. Biogen Is Not A Party To The South Korean Proceedings ........................ 8

        2. Regeneron Seeks Highly Relevant Information That Will Assist The South Korean Court And IPTAB .................................................................. 8

        3. South Korean Law Does Not Bar Regeneron's Requested Discovery .................................................................................................... 11

        4. Regeneron's Requested Discovery Is Narrowly Tailored And Does Not Impose An Undue Burden On Biogen ............................................... 12

    C. This Application May Properly Be Granted *Ex Parte* .......................................... 14

V. CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abraaj Inv. Mgmt. Ltd.*,
   No. 20-MC-229, 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) ..............................................6

*In re Barnwell Enters. Ltd.*,
   265 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................................10

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)......................................................................................................12

*In re Biomet Orthopaedics Switzerland GmBh*,
   742 F. App'x 690 (3d Cir. 2018) ................................................................................................5

*In re Chevron Corp.*,
   633 F.3d 153 (3d Cir. 2011).................................................................................................8, 11

*In re Global Energy Horizons Corp.*,
   647 F. App'x 83 (3d Cir. 2016) ................................................................................................12

*In re HES (Caribbean) Int'l Holdings, S.R.L.*,
   Civ. No. 20-506, 2020 WL 728892 (D.N.J. Feb. 13, 2020) .......................................................6

*In re Liverpool Ltd. P'ship*,
   Misc. No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) .................7, 8, 10, 11

*In re Mota*,
   Misc. No. 19-00369, 2020 WL 95493 (D. Del. Jan. 8, 2020) ..................................................13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................................ passim

*In re Letter of Request from SPS Corp. I*,
   No. 21-mc-00565-CFC, 2022 WL 3908067 (D. Del. Aug. 30, 2022)........................................5

*In re Medytox, Inc.*,
   No. 1:18-mc-00046-TWP-DLP, 2019 WL 3162174 (S.D. Ind. July 16, 2019) ..................9, 12

*In re Mesa Power Grp. LLC*,
   Civ. No. 2:11-mc-280-ES, 2012 WL 6060941 (D.N.J. Nov. 20, 2012) ..................................14

*In re NanoPyxis Co.*,
   No. 17-mc-80151, 2018 WL 1156838 (N.D. Cal. Mar. 5, 2018) .........................................9, 10

## TABLE OF AUTHORITIES—Cont'd

*In re O'Keeffe*,
    646 F. App'x 263 (3d Cir. 2016) ...................................................................................4, 10, 12

*In re Owl Shipping, LLC*,
    No. 14–5655, 2014 WL 5320192 (D.N.J. Oct. 17, 2014) .......................................................13

*In re Page do Brasil Ltda.*,
    Civ. No. 17-4269, 2018 WL 7018716 (D.N.J. Jan. 19, 2018) ...................................................5

*Pinchuk v. Chemstar Prods. LLC*,
    No. 13–mc–306–RGA, 2014 WL 2990416 (D. Del. June 26, 2014) .......................................12

*In re PQ Corp.*,
    No. 6:13–mc–9–Orl–36KRS, 2013 WL 3270407 (M.D. Fla. June 26, 2013) ...........................9

*In re Request for Int'l Judicial Assistance*
  *from the Nat'l Court Admin. of the Republic of Korea*,
    No. C15-80069 MISC LB, 2015 WL 1064790 (N.D. Cal. Mar. 11, 2015) ..............................10

*In re Request for Judicial Assistance from Seoul Cent. Dist. Court*,
    No. 23-mc-80016-BLF, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023) ....................................10

*In re Request For Judicial Assistance From Seoul Dist. Criminal Court*,
    428 F. Supp. 109 (N.D. Cal. 1977) .........................................................................................10

*In re Ex Parte Societe d'Etude de Realisation*
  *et d'Expoitation Pour le Traitment  du Mais*,
    No. 13–mc–0266, 2013 WL 6164435 (E.D. Pa Nov. 22, 2013) .............................................14

*In re Third Eye Capital Corp.*,
    Civ. No. 22-963, 2022 WL 714758 (D.N.J. Mar. 10, 2022) .....................................................7

*In re Woori Bank*,
    No. 21-mc-80084-DMR, 2021 WL 2645812 (N.D. Cal. June 28, 2021) ............................9, 11

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    142 S. Ct. 2078 (2022) .............................................................................................................7

**Statutes & Rules**

28 U.S.C. § 1782............................................................................................................... *passim*

Fed. R. Civ. P. 45..........................................................................................................................1

Applicant Regeneron Pharmaceuticals, Inc. ("Regeneron") respectfully submits this memorandum of law in support of its *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing it to serve two subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure, upon Biogen Inc. ("Biogen"), compelling Biogen to produce documents and provide deposition testimony for use in patent-infringement litigation currently pending in South Korea and a related proceeding in the South Korean patent office. Regeneron's application is also supported by the Declaration of Duck Soon Chang, an attorney representing Regeneron in the South Korean proceedings.

## I.   INTRODUCTION

Regeneron seeks narrowly tailored discovery directly relevant to patent-infringement litigation against Samsung Bioepis Co., Ltd. and Samsung Biologics Co., Ltd. (together, "Samsung") pending in South Korea and a related proceeding before the South Korean patent office. Biogen is Samsung's marketing partner to commercialize a proposed biosimilar version of Regeneron's patented prescription eye medication EYLEA® (aflibercept) in major markets worldwide. Regeneron seeks discovery regarding efforts by Biogen to commercialize Samsung's proposed biosimilar, which contains an active ingredient that was or will be manufactured and stockpiled by Samsung in South Korea in violation of Regeneron's patent rights. *See* Exs. A & B to § 1782 application.

Pursuant to 28 U.S.C. § 1782(a), a district court may order parties within its district to produce evidence in support of foreign legal proceedings. The discovery sought from Biogen is directly relevant to disputed issues in the proceedings in South Korea and cannot be obtained from Biogen through South Korean discovery mechanisms. As detailed below, Regeneron's application

1

satisfies § 1782(a)'s statutory requirements, as well as the discretionary factors identified by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

## II. BACKGROUND

Regeneron is a leading biotechnology company that markets EYLEA®, an important treatment for macular degeneration, macular edema, diabetic retinopathy, retinopathy of prematurity, and macular edema following retinal vein occlusion. Regeneron holds South Korean Patent No. 10-0659477 (the "477 Patent"), which relates to aflibercept, the active ingredient in EYLEA®. The 477 Patent is valid and listed on the Green List of the South Korean Ministry of Food and Drug Safety.

Biogen is a biotechnology company headquartered in the United States. In 2012, Biogen and Samsung Biologics Co., Ltd. ("Samsung Biologics"), a biotechnology company headquartered in South Korea, established Samsung Bioepis Co., Ltd. ("Samsung Bioepis") as a joint venture to develop, manufacture, and market biosimilar medicines.[1] One product of this joint venture, code-named "SB15," is a proposed biosimilar of Regeneron's EYLEA®. According to press releases and other public documents, Samsung completed Phase 3 clinical trials for SB15 in March 2022 and is in the process of obtaining marketing approval with the goal of distributing SB15 in major markets throughout the world. *See* Declaration of D.S. Chang ("Chang Decl.") ¶ 7; Ex. 1 at 5; Ex. 2 at 3; Ex. 3 at 1; Ex. 4 at 3. Samsung has announced that it plans to commercialize its proposed biosimilar version of EYLEA® "at the time" that Regeneron's 477 Patent expires. Chang Decl. ¶ 11; Ex. 9 at 4; Ex. 10 at 4. The 477 Patent will expire on January 9, 2024, while Regeneron's counterpart patents in Canada, Japan, Europe and Australia have already expired or will expire

---

[1] In April 2022, Samsung Biologics purchased Biogen's equity interest in Samsung Bioepis. *See* Declaration of D.S. Chang ¶ 7 n.1; Ex. 4 at 2. Samsung Bioepis is now a wholly-owned subsidiary of Samsung Biologics. *See Samsung Biologics completes full acquisition of Samsung Bioepis*, Samsung Biologics (Apr. 20, 2022), https://tinyurl.com/2n96cjy2.

shortly. Regeneron's counterpart patent in the Unites States expires in June 2023; regulatory exclusivity for EYLEA® in the United States expires in May 2024. *See* Chang Decl. ¶ 11 n.2.

Biogen is a key participant in Samsung's global rollout of SB15. In the fourth quarter of 2019, Biogen and Samsung entered into an agreement under which Biogen secured exclusive rights to commercialize SB15 and another ophthalmic biosimilar in certain major markets worldwide, including the United States, Canada, Japan, Europe, and Australia. Chang Decl. ¶ 8; Ex. 3 at 1-2; Ex. 4 at 3. Under the agreement, Samsung is responsible for developing and manufacturing SB15 and supplying it to Biogen at a pre-specified gross margin. *Id.* In exchange, Biogen made an upfront payment of $100 million USD to Samsung, with additional payments of up to $210 million USD to follow if certain development, regulatory, and sales-based milestones are achieved. Chang Decl., Ex. 4 at 3.

On January 16, 2023, Regeneron filed a complaint against Samsung Biologics and Samsung Bioepis in the Seoul Central District Court (the "South Korean Court") under the caption *Regeneron Pharmaceuticals, Inc. v. Samsung Bioepis Co., Ltd. et al.*, Case No. 2023 Gahap 42193 (the "South Korean Infringement Action"). *See generally* Chang Decl. ¶ 10; Exs. 7 & 8. In its complaint, Regeneron alleges that Samsung is currently practicing, or soon will practice, the 477 Patent in violation of South Korean law. Chang Decl. ¶ 10; Ex. 8 at 6-9. Specifically, Regeneron alleges that Samsung is currently manufacturing and stockpiling SB15 in South Korea, or will soon begin doing so, in anticipation of global commercialization of SB15. *Id.*[2] Although South Korean law permits a party other than the patent-holder to practice a patent in a limited capacity for the narrow purposes of research and testing for market approval, Regeneron's complaint alleges that Samsung is or will soon be manufacturing and stockpiling SB15 in commercial quantities. *Id.*

---

[2] Based on available information, Samsung's facilities for manufacturing biosimilar products, including SB15, are all located in South Korea. Chang Decl. ¶ 9.

Because such activity infringes the 477 Patent, Regeneron seeks an injunction against Samsung. *Id.* at 11.

On March 2, 2023, Regeneron filed a related scope-confirmation petition with the Intellectual Property Trial and Appeal Board of the Korean Intellectual Property Office (the "IPTAB") under the caption *Regeneron Pharmaceuticals, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 2023 Dang 983 (the "South Korean IPTAB Action," and together with the South Korean Infringement Action, the "South Korean Proceedings"). *See generally* Chang Decl. ¶ 12; Exs. 11 & 12. In the South Korean IPTAB Action, Regeneron seeks a declaration that Samsung's production of SB15 falls within the scope of Regeneron's 477 Patent, and cites evidence suggesting that Samsung has already begun to export SB15 from South Korea. Chang Decl., Ex. 12 at 5-6.

### III. LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In deciding whether to grant a § 1782 application, the Court "must first determine whether certain statutory requirements are met, and if those requirements are satisfied, the Court may then consider other factors to determine whether to exercise its discretion to grant the application." *In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016); *see also Intel*, 542 U.S. at 264.

Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

4

28 U.S.C. § 1782(a). The statute therefore authorizes a district court to grant a Section 1782 application when three requirements are met: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding before a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *In re Letter of Request from SPS Corp. I*, No. 21-mc-00565-CFC, 2022 WL 3908067, at *2 (D. Del. Aug. 30, 2022) (quoting 28 U.S.C. § 1782(a)); *see also Intel*, 542 U.S. at 246.

Once an applicant has satisfied Section 1782's three statutory requirements, the court has discretion to order the requested discovery. *Intel*, 542 U.S. at 264. In *Intel*, the Supreme Court articulated four factors to guide district courts in exercising their discretion to grant Section 1782 applications: (1) "whether 'the person from whom discovery is sought is a participant in the foreign proceeding'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States"; and (4) "whether the request is 'unduly intrusive or burdensome.'" *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 264-65). In exercising its discretion, a district court also should "be mindful of the 'twin aims' of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Page do Brasil Ltda.*, Civ. No. 17-4269, 2018 WL 7018716, at *4 (D.N.J. Jan. 19, 2018) (quoting *Intel*, 542 U.S. at 252), *report and recommendation adopted*, 2019 WL 168828 (D.N.J. Jan. 10, 2019).

5

## IV. ARGUMENT

### A. Regeneron Satisfies § 1782's Statutory Requirements

Regeneron's application readily satisfies each of § 1782's statutory requirements. First, Biogen, the entity from whom discovery is sought, "resides or is found" in the District of Delaware. 28 U.S.C. § 1782(a). Biogen is incorporated in Delaware and thus is "found" in this District for purposes of § 1782. *See, e.g.*, *In re HES (Caribbean) Int'l Holdings, S.R.L.*, Civ. No. 20-506, 2020 WL 728892, at *2 (D.N.J. Feb. 13, 2020) ("[Respondent] is incorporated in New Jersey and is thus 'found' in this judicial district."); *In re Abraaj Inv. Mgmt. Ltd.*, No. 20-MC-229, 2023 WL 2674752, at *3-4 (S.D.N.Y. Mar. 29, 2023) (respondent is "found" in district for § 1782 purposes if incorporated there).

Second, Regeneron seeks the requested discovery "for use" in the South Korean Proceedings. Regeneron seeks discovery regarding Biogen's efforts to commercialize SB15 manufactured in South Korea prior to expiration of Regeneron's 477 Patent, which is expected to support Regeneron's allegations that Samsung has manufactured, used, and stockpiled SB15 in South Korea in violation of Regeneron's patent rights. Discovery regarding Biogen's commercialization agreement, the timeline for commercial entry of SB15 in select markets where Biogen enjoys exclusive commercialization rights, and the quantities of SB15 received or expected to be received by Biogen from Samsung will assist Regeneron in proving that SB15 being manufactured and stockpiled in South Korea is not exclusively for research and experimentation, but instead supports Samsung's and Biogen's global commercialization efforts. Manufacturing, using, and stockpiling SB15 in South Korea for commercialization purposes before expiration of the 477 Patent term is a clear violation of South Korean patent law. Finally, discovery regarding

the SB15 product itself will assist in confirming that the product falls within the scope of Regeneron's rights under the 477 Patent.

The South Korean Infringement Action and the South Korean IPTAB Action each constitute a "proceeding" "in a foreign or international tribunal." As the Supreme Court recently confirmed in *ZF Auto. US, Inc. v. Luxshare, Ltd.*, the phrase "foreign or international tribunal" in Section 1782 encompasses both traditional courts as well as other "adjudicative bod[ies] that exercise[] governmental authority," such as government agencies. 142 S. Ct. 2078, 2086 (2022). Thus, both the South Korean Court (a traditional court) and the IPTAB (a government agency) are "foreign tribunals" for purposes of § 1782. *See also Intel*, 542 U.S. at 264 (explaining that a district court deciding a § 1782 application must consider "the receptivity of the foreign government or the court *or agency* abroad to U.S. federal-court judicial assistance" (emphasis added)). Because Regeneron intends to present the discovery obtained through this application to the South Korean Court and IPTAB for use in both proceedings, this requirement is also satisfied. *See, e.g.*, *In re Third Eye Capital Corp.*, Civ. No. 22-963, 2022 WL 714758, at *3 (D.N.J. Mar. 10, 2022) ("Discovery sought [in a section 1782 application] may be considered 'for use' in a foreign proceeding if it 'will be employed with some advantage or serve some use in the proceeding.'") (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)); *In re Liverpool Ltd. P'ship*, Misc. No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021) (discovery was sought "for use" in foreign proceeding because applicant intended to submit it in Japanese appraisal action).

Third, Regeneron qualifies as an "interested person" because it is the plaintiff in the South Korean Proceedings. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." (alteration in original)).

### B. The Supreme Court's *Intel* Factors Also Favor Granting Regeneron's Application

In addition to meeting § 1782's statutory requirements, each of the discretionary factors articulated by the Supreme Court in *Intel* weighs in favor of granting Regeneron's application.

#### 1. Biogen Is Not A Party To The South Korean Proceedings

The first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. If the respondent is a party to the foreign litigation, "the need for § 1782(a) aid generally is not as apparent," because, in many circumstances, the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Here, Biogen is a not a party to the South Korean Proceedings, and neither the South Korean Court nor the IPTAB has jurisdiction over Biogen to compel it to produce discovery in the South Korean Proceedings. Chang Decl. ¶ 17. Accordingly, this factor favors granting Regeneron's § 1782 application. *See, e.g.*, *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (first *Intel* factor favors grant of discovery where respondent is not a participant in foreign litigation and not otherwise subject to the foreign court's jurisdiction); *Liverpool*, 2021 WL 3793901, at *2 (finding that "the first *Intel* factor favors compelling the discovery sought by" applicant where "neither [respondent] is a participant in the [foreign] action").

#### 2. Regeneron Seeks Highly Relevant Information That Will Assist The South Korean Court And IPTAB

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency

8

abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  This factor also favors granting Regeneron's § 1782 request.

Regeneron seeks document and deposition discovery regarding Biogen's current activities and future plans to commercialize SB15 for distribution in select markets, including the United States, that was or will be manufactured by Samsung in South Korea prior to the expiration of the 477 Patent.  This discovery is unquestionably relevant to the South Korean Proceedings, where Regeneron alleges that Samsung has infringed the 477 Patent, or will soon do so, by manufacturing and stockpiling commercial quantities of SB15 in South Korea for export to certain foreign markets.  *See* Chang Decl., Ex. 8 at 6-9 & Ex. 12 at 4-6.  The requested discovery will assist the South Korean Court and IPTAB in resolving the South Korean Proceedings by providing evidence of Samsung's production (or intended production) of SB15 in excess of the limited experimental-use exception before expiration of the 477 Patent for Biogen's commercialization efforts.

Moreover, the South Korean Court and IPTAB are each likely to be receptive to considering evidence obtained by Regeneron from Biogen through this action.  *See* Chang Decl. ¶¶ 20-24.  The South Korean Code of Civil Procedure contains a broad admissibility standard under which South Korean courts routinely consider evidence obtained through foreign proceedings, including § 1782 applications.  *See id.* ¶ 21.  Because South Korean courts are generally receptive to evidence obtained abroad, districts courts often grant Section 1782 applications seeking discovery for use in South Korean proceedings.  *See, e.g.*, *In re Woori Bank*, No. 21-mc-80084-DMR, 2021 WL 2645812, at *3 (N.D. Cal. June 28, 2021) (granting § 1782 application seeking discovery for use in South Korean litigation).[3]  Indeed, South Korean courts

---

[3] *See also In re Medytox, Inc.*, No. 1:18-mc-00046-TWP-DLP, 2019 WL 3162174, at *10 (S.D. Ind. July 16, 2019) (granting § 1782 application seeking discovery for use in South Korean litigation), *report and recommendation adopted*, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019); *In re PQ Corp.*, No. 6:13–mc–9–Orl–36KRS, 2013 WL 3270407, at *8 (M.D. Fla. June 26, 2013)

themselves frequently use § 1782 to obtain discovery located in the United States, and have done so for decades. *See, e.g.*, *In re Request for Judicial Assistance from Seoul Cent. Dist. Court*, No. 23-mc-80016-BLF, 2023 WL 2394545, at *5 (N.D. Cal. Mar. 7, 2023) (granting § 1782 application by South Korean court); *In re Request for Int'l Judicial Assistance from the Nat'l Court Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (same); *In re Request For Judicial Assistance From Seoul Dist. Criminal Court*, 428 F. Supp. 109, 114 (N.D. Cal. 1977) (same), *aff'd*, 555 F.2d 720 (9th Cir. 1977); *see also In re NanoPyxis Co.*, No. 17-mc-80151, 2018 WL 1156838, at *3 (N.D. Cal. Mar. 5, 2018) (resolving second *Intel* factor in favor of discovery because "Korean tribunals have a long history of requesting and receiving U.S. judicial assistance").[4]

As for the South Korean IPTAB Action, Regeneron's South Korean counsel explains that the IPTAB has no restriction on receiving discovery obtained from Biogen and would likely consider it. Chang Decl. ¶ 23. In addition, South Korea is a signatory to the Hague Evidence Convention, suggesting that it is "receptive to American judicial assistance." *In re O'Keeffe*, 646 F. App'x at 267-68. There is no indication—much less "authoritative proof," *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 10-11 (D.D.C. 2017) (quoting *In re Veiga*, 746 F. Supp. 2d 8, 23-24 (D.D.C. 2010))—that the South Korean Court or IPTAB would reject the requested discovery.

The second *Intel* factor therefore favors grant of Regeneron's application. *E.g.*, *Liverpool*, 2021 WL 3793901, at *2 (resolving second *Intel* factor in favor of discovery where there was no

---

(same); *In re NanoPyxis Co.*, No. 17-mc-80151, 2018 WL 1156838, at *1 (N.D. Cal. Mar. 5, 2018) (referencing prior grant of § 1782 application).

[4] Although the evidence in these cases is obtained pursuant to 28 U.S.C. § 1782, South Korean courts do not file their own applications under the statute. Instead, South Korean courts issue a letter of request for judicial assistance to the Department of Justice. *See, e.g.*, *In re Request For Judicial Assistance*, 2015 WL 1064790, at *1. The Department of Justice then files a § 1782 application on behalf of the South Korean court. *Id.*

"reason to believe that the [foreign] court will refuse to consider the evidence [the applicant] seeks by its proposed subpoena"); *Barnwell*, 265 F. Supp. 3d at 11 (second *Intel* factor supported grant of § 1782 application where there was no "'clear and unequivocal indication that the foreign tribunal would not be receptive to the evidence sought' here" (quoting *Veiga*, 746 F. Supp. 2d at 24)).

### 3. South Korean Law Does Not Bar Regeneron's Requested Discovery

The third *Intel* factor asks the Court to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.

There is no restriction under South Korean law or in the South Korean Proceedings that would prevent Regeneron from seeking, or the South Korean Court or IPTAB from considering, evidence obtained from Biogen in the United States. Chang Decl. ¶ 23; *see also In re Woori Bank*, 2021 WL 2645812, at *3 ("Korean law does not prohibit or restrict the type of discovery sought by [applicant's] Section 1782 Application"). Under these circumstances, the third *Intel* factor favors grant of the Section 1782 application. *See, e.g.*, *In re Chevron*, 633 F.3d at 163 (third *Intel* factor favored discovery where there was no indication "that the section 1782 request [was] an attempt to circumvent proof-gathering restrictions"); *In re Liverpool*, 2021 WL 3793901, at *2 (same).

Further, while South Korea, like "[m]ost civil-law systems lack[s] procedures analogous to the pretrial discovery regime operative under the Federal Rules of Civil Procedure," *Intel*, 542 U.S. at 261 n.12, there is no requirement under Section 1782 that the requested information be discoverable under South Korean law. Indeed, the Supreme Court in *Intel* expressly held that "§ 1782(a) does not impose [a foreign-discoverability] requirement." *Intel*, 542 U.S. at 253; *see*

11

*also In re Chevron*, 633 F.3d at 163 ("We also point out that, as the Court made clear in *Intel*, there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request in the United States.").

Similarly, the third discretionary factor does not require Regeneron to seek discovery in South Korea prior to seeking discovery pursuant to a § 1782 request. The Third Circuit has rejected any requirement to first exhaust discovery abroad as inconsistent with the plain text of § 1782. *In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998) (noting that a foreign-exhaustion requirement "has been rejected by those courts that have addressed it"); *In re O'Keeffe*, 646 F. App'x at 268 (holding that a foreign-exhaustion requirement "would not be in line with [§ 1782(a)'s] statutory text"). Further, not only is discovery before South Korean courts very limited, with no pretrial testimonial discovery at all, but there is no mechanism under South Korean law by which the South Korean Court or the IPTAB could order Biogen, a third party located outside of its jurisdiction, to provide the requested documents and testimony. *See* Chang Decl. ¶ 18; *Medytox*, 2019 WL 3162174, at *5 (finding that "Korean discovery rules do not contemplate" "pretrial deposition[s]").

Accordingly, the third *Intel* factor favors grant of Regeneron's application.

### 4. Regeneron's Requested Discovery Is Narrowly Tailored And Does Not Impose An Undue Burden On Biogen

The fourth and final *Intel* factor asks whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A]ssessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis" under the Federal Rules of Civil Procedure, which means that courts permit "discovery [under § 1782] that appears reasonably calculated to lead to the discovery of admissible evidence." *In re Global Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016) (alteration adopted). As with ordinary discovery requests, the reasonableness of the discovery sought under a § 1782 application depends on the circumstances of the litigation.

12

*See, e.g.*, *Pinchuk v. Chemstar Prods. LLC*, No. 13–mc–306–RGA, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) ("broad" discovery requests to third-party respondents were not unduly burdensome when "reasonably tailored to the scope of the claims asserted by [plaintiff] in the [f]oreign [p]roceedings").

Regeneron's subpoenas are narrowly tailored and seek limited information that is directly relevant to the claims at issue in the South Korean Proceedings. The document requests seek information regarding Biogen's efforts to commercialize SB15 in the United States and other major markets that was or will be manufactured in South Korea prior to the expiration of Regeneron's 477 Patent, *i.e.*, product resulting from Samsung's production and stockpiling of SB15 in South Korea in violation of the 477 Patent. The deposition subpoena requests limited testimony necessary to understand the documents produced and the nature, timing, and scope of Biogen's commercialization efforts, including the quantity of SB15 required for impending commercialization in countries where Biogen has exclusive commercialization rights. Both subpoenas are focused on SB15 that was or will be manufactured in South Korea prior to expiration of the 477 Patent in January 2024—the limited time period directly relevant to the proceedings in South Korea. Regeneron's application therefore seeks highly relevant information that should not be unduly burdensome for Biogen to identify and produce, as it relates to Biogen's commercialization efforts under its 2019 agreement with Samsung and SB15 produced in South Korea during a discrete timeframe. The discovery is critical not only for proving that Samsung has already or will infringe the 477 Patent by manufacturing SB15 in excess of the limited experimental-use exception under South Korean law, but also in obtaining an injunction of Samsung's infringement.

Accordingly, the fourth *Intel* factor also favors grant of Regeneron's application.

### C. This Application May Properly Be Granted *Ex Parte*

Courts in this District and elsewhere in the Third Circuit have recognized the propriety of granting *ex parte* applications for discovery under 28 U.S.C. § 1782. *See, e.g.*, *In re Mota*, Misc. No. 19-00369, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) ("Discovery applications under § 1782 are often granted ex parte . . . ."); *In re Owl Shipping, LLC*, No. 14–5655, 2014 WL 5320192, at *4 (D.N.J. Oct. 17, 2014) (granting *ex parte* application for discovery under Section 1782); *In re Société d'Etude de Réalisation et d'Expoitation Pour le Traitment du Mais*, No. 13–mc–0266, 2013 WL 6164435, at *4 (E.D. Pa. Nov. 22, 2013) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (citation omitted)).

Regeneron has drafted narrowly tailored requests for discovery targeting documents and testimony regarding Biogen's efforts to commercialize SB15 resulting from Samsung's infringement of the 477 Patent. This discovery would support Regeneron's claims in the South Korean Proceedings and refute any reliance by Samsung on the experimental-use exception. However, Regeneron's *ex parte* application does not prejudice Biogen's right to object to or to otherwise challenge the subpoenas once they are authorized by this Court and served. *See In re Mesa Power Grp. LLC*, Civ. No. 2:11-mc-280-ES, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012).

### V. CONCLUSION

Because Regeneron's application satisfies § 1782(a)'s statutory requirements and the *Intel* factors support granting the application, Regeneron respectfully requests that this Court issue an order authorizing Regeneron to serve Biogen with subpoenas in substantially the same form as Exhibits A and B to Regeneron's § 1782 application.

Dated: April 27, 2023

Respectfully submitted,

By: _____
David E. Wilks (DE Bar No. 2793)
**Wilks Law LLC**
4250 Lancaster Pike Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Fax: (302) 225-0851
Email: dwilks@wilks.law

Irena Royzman (*pro hac vice forthcoming*)
Christine Willgoos (*pro hac vice forthcoming*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
Email: iroyzman@kramerlevin.com

Jennifer S. Windom (*pro hac vice forthcoming*)
Zachary N. Ferguson (*pro hac vice forthcoming*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
2000 K Street, NW
Washington, DC 20006
Telephone: (202) 775-4500
Fax: (202) 775-4510
Email: jwindom@kramerlevin.com

*Attorneys for Applicant
Regeneron Pharmaceuticals, Inc.*

15