IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>REGENERON PHARMACEUTICALS,<br>INC., Applicant,<br><br>for an Order Pursuant to 28 U.S.C. § 1782<br>to Take Discovery for Use in Foreign<br>Proceedings. | C.A. No. |

**DECLARATION OF DUCK SOON CHANG IN SUPPORT OF REGENERON'S**
***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO
TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

I, DUCK SOON CHANG, hereby declare as follows:

1. My name is Duck Soon Chang. I am an attorney at law and have been admitted to the South Korean bar since 1985. I am a partner at the firm Kim & Chang in Seoul, South Korea, where I have worked since 2010. I also serve as the president of the Intellectual Property Training Institute of the Seoul Bar Association.

2. My firm represents Regeneron Pharmaceuticals, Inc. ("Regeneron") in a patent-infringement action against Samsung Bioepis Co., Ltd., and Samsung Biologics Co., Ltd. (together, "Samsung") relating to Regeneron's patented prescription eye medication EYLEA® (aflibercept). That infringement action is currently pending before the Seoul Central District Court (the "South Korean Court"), and is captioned *Regeneron Pharmaceuticals, Inc. v. Samsung Bioepis Co., Ltd. et al.*, Case No. 2023 Gahap 42193 (the "South Korean Infringement Action").

3. My firm also represents Regeneron in a positive scope-confirmation action brought by Regeneron against Samsung Bioepis Co., Ltd. before the Intellectual Property Trial and Appeal Board of the Korean Intellectual Property Office (the "IPTAB") addressing Regeneron's South Korean patent relating to the active ingredient in EYLEA® and Samsung Bioepis Co., Ltd.'s

proposed biosimilar version of EYLEA®. That action is captioned *Regeneron Pharmaceuticals, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 2023 Dang 983 (the "South Korean IPTAB Action").

4. I make this declaration in support of Regeneron's application to take discovery from third-party Biogen Inc. ("Biogen") for use in the South Korean Infringement Action and, as relevant, the South Korean IPTAB Action. This declaration is based on my personal knowledge, documents from Regeneron that I have reviewed, and legal and factual research that I have conducted or that was conducted under my supervision.

A. BACKGROUND OF THE KOREAN DISPUTE

5. Regeneron is a biotechnology company incorporated and headquartered in New York. Regeneron developed EYLEA®, an important treatment for macular degeneration, macular edema, diabetic retinopathy, retinopathy of prematurity, and macular edema following retinal vein occlusion.

6. Regeneron holds South Korean Patent No. 10-0659477 (the "477 Patent" or "drug substance patent"), which relates to aflibercept, the active ingredient in EYLEA®. The 477 Patent is valid and listed on the Green List of the South Korean Ministry of Food and Drug Safety in connection with "EYLEA Injection (aflibercept)" and "EYLEA Pre-filled Syringe (aflibercept)." The 477 Patent expires on January 9, 2024.

7. Samsung Biologics Co., Ltd. ("Samsung Biologics"), is a biotechnology company incorporated and headquartered in South Korea. It is the parent company of Samsung Bioepis Co., Ltd. ("Samsung Bioepis"), a company incorporated and headquartered in South Korea that was founded in 2012 as a joint venture between Samsung Biologics and Biogen.[1] Samsung developed

---

[1] In April 2022, Samsung Biologics purchased Biogen's equity interest in Samsung Bioepis. Ex. 4 at 2. Samsung Bioepis is now the wholly-owned subsidiary of Samsung Biologics. *See Samsung Biologics completes full acquisition of Samsung Bioepis*, Samsung Biologics (Apr. 20, 2022), https://tinyurl.com/2n96cjy2.

a product code-named "SB15," which is a proposed biosimilar referencing EYLEA®. Samsung reports that it successfully completed Phase 3 clinical trials for SB15 in March 2022 and is in the process of obtaining marketing approval with the goal of launching SB15 for sale in select markets, including the United States, Canada, Japan, Europe, and Australia. *See* Ex. 1 at 4-5; Ex. 2 at 3; Ex. 3 at 1; Ex. 4 at 3.

8. Biogen is a biotechnology company incorporated in Delaware and headquartered in Massachusetts. Biogen is commercializing a number of biosimilars developed and manufactured by Samsung, including SB15. In particular, Biogen and Samsung entered into an agreement in 2019 under which Biogen secured exclusive rights to market, sell, and supply SB15 and another ophthalmic biosimilar (SB11) in major markets worldwide, including the United States, Canada, Japan, Europe, and Australia. *See* Ex. 3 at 1-2; Ex. 4 at 3. Under the agreement, Samsung is responsible for manufacturing SB15 and supplying it to Biogen at a specified gross margin. *See id.* Although Samsung Biologics purchased Biogen's equity interest in Samsung Bioepis, Biogen retains its exclusive rights to commercialize SB15 using drug substance supplied by Samsung. Ex. 5 at 1.

9. To my knowledge, Samsung's facilities for manufacturing biosimilar products, including the drug substance of SB15, are located in South Korea. As a result, the drug substance for the proposed SB15 biosimilar product that Biogen stockpiles or uses for commercialization will be manufactured in South Korea. The SB11 ophthalmic biosimilar that Biogen commercializes in the United States under the brand name BYOOVIZ™ also is manufactured in South Korea. Ex. 6 at 2.

10. On January 16, 2023, Regeneron initiated the South Korean Infringement Action by filing a complaint against Samsung in the South Korean Court. A true and correct copy of the complaint

in the South Korean Infringement Action is attached as Exhibit 7, together with an English working translation attached as Exhibit 8. In its complaint, Regeneron alleges that Samsung is practicing or soon will practice the 477 Patent in violation of South Korean law. Regeneron seeks to enjoin and prevent the infringement of its patent rights.

11. Under Article 96(1)(i) of the South Korean Patent Act, a party other than the patent-holder may practice a patent for the limited purposes of research or testing for market approval. However, Regeneron contends that Samsung is practicing or intends to practice the 477 Patent beyond the scope of this limited research and experimentation exemption. Specifically, Samsung has claimed that its proposed biosimilar version of EYLEA® will be commercialized "at the time" that the 477 Patent expires. *See* Ex. 9 at 4; Ex. 10 at 4. Regeneron's counterpart patents in Canada, Japan, Europe, and Australia to the 477 Patent have already expired or will expire shortly, and regulatory exclusivity for EYLEA® in the United States will expire in May 2024.[2] Commercialization at the time of patent or regulatory exclusivity expiration or shortly thereafter in any of these markets requires manufacture and use of the drug substance on a commercial scale in South Korea prior to the expiration of the 477 Patent so that the final drug product can be prepared, stockpiled, distributed, and sold. Manufacturing, using, and stockpiling of the drug substance in SB15 in South Korea during the 477 Patent term for later commercialization are clear violations of South Korean patent law. *See, e.g.*, Seoul Central District Court Decision No. 2012 Gahap 2694, rendered on December 18, 2012. Regeneron's complaint also cites evidence that Samsung has already begun to export SB15 from South Korea.

---

[2] Regeneron's U.S. counterpart to the 477 Patent expires in June 2023. Regeneron obtained regulatory exclusivity for EYLEA® through May 17, 2024. *See Regeneron Receives Six Months of U.S. Pediatric Exclusivity for EYLEA (Aflibercept) Injection*, Regeneron (Oct. 21, 2022), https://tinyurl.com/yzd6er4n. As a result of this regulatory exclusivity, no biosimilar (including SB15) may be approved by the FDA for marketing until May 2024. But regulatory exclusivity does not preclude stockpiling in the United States of SB15 prepared in Korea in advance of May 2024.

12. In addition to the South Korean Infringement Action, Regeneron initiated the South Korean IPTAB Action against Samsung Bioepis Co., Ltd. on March 2, 2023. A true and correct copy of the petition in the South Korean IPTAB Action is attached as Exhibit 11, together with an English working translation attached as Exhibit 12. In the South Korean IPTAB Action, Regeneron seeks a determination that Samsung's SB15 product falls within the scope of the 477 Patent. As in the South Korean Infringement Action, the South Korean IPTAB Action petition cites evidence that Samsung has already begun to export SB15 from South Korea.

### B. DISCOVERY SOUGHT BY REGENERON AND ITS RELEVANCE TO THE KOREAN INFRINGEMENT AND IPTAB ACTIONS

13. Regeneron seeks this Court's assistance in obtaining discovery from Biogen regarding Biogen's efforts to commercialize SB15, containing drug substance that was or will be manufactured in South Korea prior to the expiration of the 477 Patent, *i.e.*, product resulting from Samsung's infringement of the 477 Patent. In particular, Regeneron seeks documents and deposition testimony concerning the nature, extent, and timing of Biogen's commercialization efforts, the quantities of SB15 that have been or will be manufactured in South Korea for purposes of commercialization by Biogen, the quantities of SB15 manufactured prior to expiration of the 477 Patent that Biogen has received or expects to receive or requires for commercialization, and Biogen's disposition of any drug substance of SB15 that has or will be manufactured prior to the expiration of the 477 Patent, including storage and stockpiling of SB15 for commercialization, among other information relevant to the patent dispute.

14. The discovery Regeneron seeks is highly relevant to both the South Korean Infringement Action and the South Korean IPTAB Action. Biogen's commercialization agreements, including the 2019 agreement, and commercial entry dates for SB15 in select markets where Biogen enjoys exclusive commercialization rights, including Japan, Europe, Australia and Canada (where the

EYLEA® drug substance patent has already expired or will expire shortly) and the United States (where regulatory exclusivity expires in May 2024), will assist Regeneron in proving that SB15 manufactured in South Korea prior to expiration of the 477 Patent is critical for impending commercialization and in obtaining an injunction of that infringement. And the documents that Regeneron seeks concerning SB15 that Biogen has received or expects to receive will enable Regeneron to prove that Samsung has already or will soon violate the 477 Patent by manufacturing SB15 in excess of the limited experimental-use exception under South Korean law. Finally, discovery regarding the SB15 product itself will assist in confirming that the product falls within the scope of Regeneron's rights under the 477 Patent.

## C. DISCOVERY PROCEDURES UNDER SOUTH KOREAN LAW

15. The discovery sought from Biogen here is not available to Regeneron in the South Korean Infringement Action or the South Korean IPTAB Action.

16. Unlike in the United States, there is no pretrial discovery in South Korea. Discovery may be available over the course of a number of hearings held during the entire proceedings, but is very limited. Article 345 of the South Korean Code of Civil Procedure permits a party to petition the court to order discovery, but only if the petitioner can establish with specificity the requested documents that will contain probative evidence. It is my view that it would be very difficult for Regeneron to identify the title or content of specific documents sufficient for the South Korean Court to propound discovery requests to Samsung for the documents sought here.

17. Moreover, Biogen is not a party to the South Korean Infringement Action or the South Korean IPTAB Action, and there is no mechanism under South Korean law for the South Korean court or the IPTAB directly to obtain third-party discovery located in the United States. Neither

the South Korean Court nor the IPTAB has jurisdiction over Biogen and therefore each lacks authority to compel Biogen to produce the requested discovery.

18. In addition, there is no mechanism under South Korean law for obtaining deposition testimony from a Biogen representative in either the South Korean Infringement Action or the South Korean IPTAB Action. South Korean civil procedure generally does not permit pretrial testimonial discovery, especially against third-party entities over whom a court does not have jurisdiction.

19. In my opinion, there is no effective mechanism under South Korean law by which Regeneron could obtain the discovery from Biogen that it seeks in its application.

**D. RECEPTIVITY OF SOUTH KOREAN COURTS TO FOREIGN DISCOVERY**

20. It is my view that the South Korean Court and the IPTAB likely would consider the evidence that Regeneron seeks to obtain through its application.

21. South Korean courts are generally receptive to foreign discovery. The South Korean Code of Civil Procedure contains a "Principle of Free Evaluation of Evidence" (Art. 202). Under this principle, South Korean courts regularly consider evidence obtained through foreign proceedings, including discovery obtained through Section 1782 applications. For example, I personally represented Apple Korea in the Seoul Central District Court case *Samsung Electronics Co., Ltd. v. Apple Korea Ltd.*, No. 2011 Gahap 39552. In that case, I submitted, and the Court accepted, a certain document as evidence that Apple had obtained from Intel Corporation, a non-party to the case, for use in parallel German, Japanese, Dutch, and South Korean actions pending against Samsung. That document was obtained through a Section 1782 application granted by the U.S. District Court for the Northern District of California. *See* Order (Dkt. 3), *In re Apple Inc.*, No.

5:11-MC-80169 (N.D. Cal. July 28, 2011). The Seoul Central District Court decided a key issue in that case based on the evidence obtained through the Section 1782 application.

22. Moreover, South Korean courts regularly seek and receive assistance obtaining evidence from U.S. district courts, and have done so for decades. *See, e.g.*, *In re Request for Judicial Assistance from Seoul Central District Court*, No. 23-mc-80016-BLF, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023); *In re Request for Int'l Judicial Assistance from the Nat'l Court Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *1 (N.D. Cal. Mar. 11, 2015); *In re Request for Judicial Assistance From Seoul Dist. Criminal Court, Seoul, Korea*, 428 F. Supp. 109, 114 (N.D. Cal. 1977).

23. In addition, I understand from my colleagues who are former IPTAB examiners that submitting the discovery requested here in the South Korean IPTAB Action would also be allowed and helpful. Like South Korean courts, the IPTAB will generally admit evidence submitted by parties, including evidence obtained through foreign proceedings such as Section 1782 applications. I am aware of no South Korean law, rule of evidence, or rule of procedure that prohibits a party from seeking discovery under Section 1782 or using discovery obtained under Section 1782 in court or in administrative proceedings in South Korea.

24. Given that South Korean courts are generally receptive to Section 1782 discovery and liberally admit evidence obtained by parties, I am of the view that authorizing Section 1782 discovery here would not offend the South Korean Court, and that any evidence obtained in connection with Regeneron's Section 1782 application would likely be considered by the South Korean Court and the IPTAB.

- 9 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Seoul, South Korea on April 27, 2023

Duck Soon Chang